WORMSTADT, Respondent, v. SECURITY INSURANCE CO. OF NEW HAVEN, Appellant

(5 N. W.2d 30.)

(File No. 8531. Opinion filed July 27, 1942.)

Max Royhl and George E. Longstaff, both of Huron, for Appellant.

H. W. Markey, of Huron, for Respondent.

RUDOLPH, P.J. This action is based upon a policy of fire insurance issued by the defendant company and covering a certain motor truck described therein. In addition to the policy covering the described truck it covered any newly acquired truck which the insured acquired to replace the truck described in the policy, provided the insured notified the insurance company within ten days following the date of delivery of the newly acquired truck.

The facts disclosed that plaintiff obtained from the defendant company a policy of insurance, insuring against fire a certain Diamond T Truck. While this policy of insurance was in force the plaintiff traded this truck to one Egan and received in the trade a truck described in the record as a GMC Truck. As a part of the deal whereby these trucks were exchanged the plaintiff agreed to transfer the insurance policy covering the Diamond T Truck to Egan. The plaintiff went to the office of the agent of the defendant company and interviewed the secretary of the agency. The plaintiff testified concerning this interview as follows:

"When I went up there I told her (the secretary) I had traded my Diamond T Truck off and made a deal with Egan and intended to transfer the insurance policy over with the Diamond T Truck.

"Q. What did she say? A. She told me I couldn't do that then but had to transfer the papers to Sioux Falls or get information from Sioux Falls. Any way she would write Sioux Falls and get the information or papers, whatever was needed, and then they would pick up the policy and transfer the insurance to Egan, so I took my policy home.

"Q. Did the insurance company or Flanagan's Agency ever write you or ask you to bring· in your policy? A. No."

At the time of the conversation with the secretary there was issued to the plaintiff Exhibit 2, which is as follows:

"This is to certify that assignments on policies no. 15590 and no. 09388 to Mr. Egan is being effected today, and endorsements to that effect will be forthcoming immediately.

"Flanagan's Insurance Agency
"(Signed) Virginia Kaloupek, Secty."

This Exhibit 2 the plaintiff sent to Mr. Egan together with a transfer of title to the Diamond T Truck.

Following this conversation with the plaintiff the secretary of the Flanagan's Insurance Agency wrote to the defendant company as follows: "Would you please issue endorsements to take care of the following transactions: Mr. Wormstadt has sold the Diamond T Truck insured under the above policies to L. T. Egan of Colton, South Dakota; and there is now no mortgage against the truck."

On October 12th after receipt of the above letter the defendant company sent the endorsements, changing the name of the assured in the policy from that of the plaintiff to L. T. Egan, directly to the Flanagan Agency. The rider changing the name of the assured was dated as of October 10th. It appears, however, that the plaintiff had never sent the policy to Mr. Egan and the rider changing the assured was never affixed to the policy. The policy always remained with the plaintiff.

On October 15th the GMC Truck, which the plaintiff had received in exchange for the Diamond T Truck described in the policy, was destroyed by fire. The plaintiff has brought this action contending that the policy provision, above referred to, which insures a newly acquired truck obtained to replace the truck described in the policy, is applicable to the above state of facts and entitles him to recover for his loss. The trial court sustained the contention of the plaintiff and entered judgment against the defendant. The defendant has appealed from the judgment entered.

■ The contract of insurance provides in part, "* * * this entire policy shall be void, unless otherwise provided by agreement in writing added hereto, * * * if this policy or any part thereof shall be assigned before loss." We consider first the question of whether Wormstadt had assigned the policy to Egan before the loss occurred. The trial court found that the policy had not been assigned. It is clear from the evidence that Wormstadt had agreed to assign the policy to Egan. But an agreement to assign a policy of insurance, when there is no legal assignment, does not avoid the policy. Manufacturers' Mut. Fire Ins. Co. v. Swaney et al., 53 Ind.

App. 429, 101 N. E. 843; Lazarus v. Commonwealth Insurance Co., 22 Mass. 76, 5 Pick. 76; Griffey v. New York Central Insurance Co., 100 N. Y. 417, 3 N. E. 309, 53 Am. Rep. 202; Mahr et al. v. Bartlett et al., 53 Hun. 388, 7 N.Y.S. 143.

 It is undoubtedly a correct interpretation of the record to state that the plaintiff went to the agency office intending to complete the agreement to assign the policy to Egan, but, according to plaintiff's version of what took place at the office, he was told that such transfer or assignment could not be made without the consent of the Sioux Falls office. It is clear that plaintiff thereafter did nothing to complete the agreement to transfer the policy to Egan, but retained the policy in his possession awaiting word from the company. The witness for the defendant gave a different version of what took place at the agency office, but the trial court chose to accept the version of the plaintiff and, of course, this court is bound by that choice of the trial court. Under this record we must therefore hold that the agreement by plaintiff to assign the policy was unexecuted at the time the loss occurred and that the policy was not rendered void by reason of an assignment.

 The policy not having been in fact assigned by the plaintiff to Egan the issuance of the rider by the Sioux Falls office, and the mailing of this rider to Egan can have no binding effect. The issuance of the rider indicated a willingness on the part of the company to an assignment by plaintiff, but it did not constitute an assignment. The rider was ineffective for another reason. The policy of insurance at all times remained in plaintiff's possession unassigned. The rider to the policy, after its receipt by the agency, was sent to Mr. Egan at Colton. When it reached him does not appear from the record other than it was the opinion of the secretary of the agency office that it was sent from that office on the morning of October 14th. In any event the rider was never attached to the policy. This court, speaking with reference to the standard fire insurance policy adopted by the legislature of this state, said in the case of Davenport v. Firemen's Insurance Co. of Newark, N. J., 47 S. D. 426, 199 N. W. 203, 204: "The law requires that the entire agree-

ment, whatever it may be, shall be contained in, or indorsed upon, the policy. In this respect the law is absolutely inflexible. No officer or agent of an insurance company can bind the company, or estop it by any contract or agreement not included in or indorsed upon the policy itself. The effect of this provision of the law is to make the policy the only competent evidence of the contract between the insurer and the insured."

And in the case of Amos v. Hardware Mutual Fire Insurance Co., 64 S. D. 434, 267 N. W. 336, 337, it was said: "Any changes or waivers made in the provisions of a standard policy must be written on or attached to the policy."

See, also, Hronish v. Home Insurance Co. of New York, 33 S. D. 428, 146 N. W. 588; Prose v. Hawkeye Securities Fire Insurance Co., 51 S. D. 3, 211 N. W. 970.

■■■■ A further question is presented and that is whether the plaintiff by his acts estopped himself from asserting any rights under the policy. We think it clear, apart from other considerations, that there could be no estoppel against plaintiff, unless by his acts he had caused the defendant company to incur liability to Egan. In our opinion, no such liability had been incurred by the company prior to plaintiff's loss. Defendant contends that Exhibit 2 constituted a "Binder", whereby the defendant became obligated to Egan, and that plaintiff caused it to issue such "Binder". We seriously doubt whether the law relating to binding receipts issued upon the application for insurance is applicable to the facts before us. However, conceding such law is applicable, it is established that to place liability upon the insurer under Exhibit 2, as a binding receipt, the court must be able to fairly infer from its terms that there was an agreement for present insurance in favor of Egan. Albers v. Security Mutual Life Insurance Co., 41 S. D. 270, 170 N. W. 159. We find nothing in Exhibit 2 from which might be fairly inferred an intention for present insurance in favor of Egan. It is simply a statement to the effect that the policies are being assigned and that endorsements to that effect will be forthcoming immediately. This exhibit speaks of the future, i.e., that endorsements will be forth-

coming. It does not in itself purport to be an endorsement authorizing an assignment, or to have any present effect whatever. It was understood between the plaintiff and the agency that these endorsements were to come from the Sioux Falls office. The purpose that plaintiff was seeking to accomplish when at the agency office was to assign the policy to Egan, and to accomplish this purpose it was necessary to obtain a waiver from the company of the policy provision against an assignment of the policy. We have referred to one provision of the policy which required that such waiver must be "by agreement in writing added hereto." There is another policy provision which provides, "no officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto." According to the version of the transaction in the agency office, which the trial court accepted, the waiver of the policy provision and the endorsement to accomplish this purpose were to come from the Sioux Falls office. Viewed in the light of this version of the testimony, and the policy provisions, Exhibit 2 amounts to nothing more than a statement that the agency was proceeding to obtain the necessary endorsements from Sioux Falls, which is confirmed by its letter to that office.

We therefore hold, under this record, that the policy of insurance had not been assigned prior to the loss; that plaintiff was acting to obtain the proper authorization from the company for an assignment of the policy and a change of the named insured, but that at the time the loss occurred such authorization, which would constitute a waiver of terms of the policy, had not been attached to the policy and had not, therefore, become a part of the policy contract.

The judgment appealed from is affirmed.

All the Judges concur.